Bret D. Lewis (SB# 166819)
3955 Mandeville Canyon Road
Los Angeles, CA 90049
310-770-2361
Fax: 310-362-8424
bdlawyager@gmail.com

Attorney for Plaintiff
Delmar Arnaud

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DELMAR ARNAUD,
an individual,

Plaintiff

v.

AMARU ENTERTAINMENT, INC., a
Delaware corporation; DOES 1-20
inclusive,

Defendants.

CASE NO.:

COMPLAINT FOR ACCOUNTING,
BREACH OF CONTRACT,
AND RELATED RELIEF;

DEMAND FOR JURY TRIAL

1

For his complaint against defendants, Delmar Arnaud ("Plaintiff") alleges as follows:

### JURISDICTION AND VENUE

1.      This is a civil action for accounting, breach of contract, breach of the implied covenant of good faith and fair dealing, restitution, money had and received, quantum meruit, and related relief arising from Defendant's exploitation of musical compositions and master recordings in which Plaintiff owns interests, may own and/or co-own copyright interests absent a valid transfer, and/or as to which Defendant owes accounting and royalty obligations.

2.      This Court has subject matter jurisdiction under 28 U.S.C. section 1332(a) because Plaintiff is a citizen of Georgia, Defendant is a citizen of Delaware and California, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff does not assert a copyright infringement claim in this action.

3.      Venue is proper in this District under 28 U.S.C. section 1391(b) because Defendant resides in this District, maintains its principal place of business in Los Angeles, California, and a substantial part of the events, omissions, and exploitations giving rise to the claims occurred in this District.

### PARTIES

4.      Plaintiff DELMAR ARNAUD, professionally known as Daz Dillinger, is a world-renowned multi-platinum artist, producer, and songwriter who resides in the State of Georgia.

5.      Defendant AMARU ENTERTAINMENT, INC. ("Amaru") is, and at all relevant times was, a Delaware corporation qualified to do business in the State of California as a foreign corporation with its principal place of business in Los Angeles, California.

6.      Plaintiff is ignorant of the true names and capacities of DOES 1 through 20, inclusive, and therefore sues those defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages were proximately caused by such defendants.

### ALLEGATIONS COMMON TO ALL CLAIMS

7.      In the course of his career, Plaintiff created, wrote, co-wrote, produced, performed

on, and/or otherwise contributed copyrightable expression and valuable production services to numerous Tupac Shakur-related musical works, including both musical compositions and sound recordings (collectively, the "Works").

8. The Works include, without limitation, the songs, masters, remixes, revised versions, and direct derivatives presently identified in Schedule A, together with any additional direct derivatives, alternate versions, successor exploitations, or administratively related recordings and compositions that discovery may reveal to be within the same accounting chain.

9. Plaintiff is informed and believes that Amaru has held itself out as entitled to exploit, license, administer, collect income from, and otherwise commercially benefit from the Works, and from derivative, revised, remixed, alternate, and successor versions thereof, and that it has done so within at least the last five years and continuing to the present, throughout the world, generating substantial revenue.

10. Plaintiff is informed and believes that, with respect to many or all of the master recordings embodying the Works, Plaintiff entered into written agreements with Amaru and/or with predecessors, affiliates, labels, administrators, or other entities whose accounting and payment obligations Amaru later assumed, ratified, adopted, or succeeded to insofar as Amaru exploits, administers, collects on, and pays under those master recordings.

11. Plaintiff is informed and believes that the operative written agreements required Amaru, or the entities whose obligations it assumed or adopted, to render royalty statements and accountings on a periodic basis, including no less than semi-annually, and to pay all sums due from exploitation of the applicable master recordings and related exploitations.

12. After a diligent search and reasonable inquiry, Plaintiff is not presently in possession of all relevant agreements, assignments, licenses, royalty statements, side letters, amendments, and other documents that may have been executed by and among Plaintiff, Amaru, Tupac Shakur-related entities, labels, administrators, or other relevant parties concerning the Works. Because many of the relevant transactions occurred years ago and records were maintained by third parties and affiliated entities, Plaintiff is informed and believes that some such documents are in Amaru's possession, custody, or control and that others may have been lost, misplaced, or inadvertently destroyed over time.

13.     To the extent one or more written agreements cannot presently be located or their precise terms cannot presently be proven in full, Plaintiff alleges in the alternative that the parties' course of dealing, Amaru's past and partial payments, Amaru's exploitation of the Works with knowledge of Plaintiff's interests, industry custom, credits, and surrounding circumstances created enforceable oral and/or implied-in-fact obligations requiring Amaru to account to Plaintiff and pay him royalties and other sums from exploitation of the master recordings. Plaintiff further alleges, in the alternative, that if discovery shows no operative agreement governs a particular master recording or exploitation, and no valid written transfer of Plaintiff's copyright ownership interest in that master recording exists, then Plaintiff owns and/or at minimum co-owns one or more copyright interests in such master recording by virtue of authorship and/or joint authorship.

14.     Plaintiff is informed and believes that, with respect to one or more master recordings embodying the songs "I Ain't Mad at Cha," "Got My Mind Made Up," "Skandalouz," "Ambitionz az a Ridah," and "2 of Amerikaz Most Wanted (feat. Snoop Dogg)," and absent operative agreements or valid written transfers to the contrary, Plaintiff owns and/or at minimum co-owns copyright interests therein. This allegation is based, among other things, on Plaintiff's authorship and production contributions, crediting, prior payment conduct, and the absence, after diligent search and reasonable inquiry, of any presently known operative document demonstrating a valid transfer of those particular master interests. Plaintiff does not presently assert a copyright infringement claim as to those masters, but expressly reserves the right to seek leave to amend this Complaint to assert copyright infringement and related copyright remedies if discovery from Defendant and other relevant parties confirms such ownership interests, the absence of authorization, and satisfaction of any applicable statutory prerequisites.

15.     With respect to the musical compositions embodied in many of the Works, including the compositions identified in Schedule A, Plaintiff is informed and believes and thereon alleges that his status as a co-writer and co-owner has been acknowledged through credits, royalty practices, industry records, prior payment conduct, and/or Amaru's course of dealing. Plaintiff accordingly seeks an accounting and payment of all sums due from exploitation of those musical compositions and does not seek declaratory relief as to ownership at this time. For the musical compositions identified in Schedule A, Plaintiff has been credited as a writer and/or recognized

4

as a royalty participant in prior exploitation cycles, including through credits, royalty practices, prior payment conduct, and related industry records.

16.    The revenues, statements, contracts, licenses, calculations, recoupment positions, reserves, deductions, and other accounting data relating to the Works are peculiarly within Amaru's possession, custody, and control, and cannot be fully ascertained by Plaintiff without discovery and an accounting.

17.    On or before October 18, 2024, Plaintiff demanded that Amaru pay all royalties due, provide a full accounting, and produce copies of all pertinent agreements relating to records released or administered by Amaru featuring Plaintiff's performances and contributions as a writer, songwriter, producer, and/or performer.

18.    Following that demand, Amaru paid Plaintiff $91,445.27. Plaintiff understood that payment to be for royalties or related sums owing in connection with the Works. However, Amaru did not provide royalty statements, backup, or an accounting showing the basis for that payment, the periods covered, the works included, or the deductions and reserves applied.

19.    Amaru's payment confirms that monies were due and that Amaru was acting in response to Plaintiff's royalty and accounting demand, but its failure to disclose the basis for the payment has prevented Plaintiff from determining whether the payment was complete, accurate, timely, and inclusive of all exploitations of the Works.

20.    Plaintiff is informed and believes that additional royalties, profits, and other monies due and owing from Amaru exceed the amount already paid and exceed the jurisdictional minimum of this Court. At a minimum, Amaru has failed to render statements and/or pay sums due within the applicable limitations periods and continuing to the present. The precise amount owed will be shown according to proof after an accounting and discovery.

21.    All conditions precedent to Plaintiff's claims have been performed, have occurred, or have been excused. To the extent Plaintiff seeks equitable accounting relief, legal remedies are inadequate to determine the exact sums due because the relevant books and records are within Amaru's control.

## FIRST CAUSE OF ACTION

Accounting as to Musical Compositions (Based on Plaintiff's Co-Ownership Interests)

5

22.     Plaintiff realleges and incorporates by reference paragraphs 1 through 21 as though fully set forth herein.

23.     Plaintiff is a co-writer and co-owner of one or more musical compositions identified in Schedule A and/or embodied in the Works identified in Schedule A.

24.     As a co-owner of jointly owned musical compositions, Plaintiff is entitled in equity to his share of royalties, profits, and other monetary benefits attributable to exploitation of those compositions, including amounts received by Amaru through licensing, administration, synchronization, streaming, digital exploitation, physical exploitation, public performance income, mechanical income, or other uses of those compositions.

25.     Amaru has received revenues and/or controlled administration and collections relating to such compositions, but the accounts are complicated and the balance due cannot be ascertained without an accounting because the relevant books, records, contracts, licenses, royalty statements, receipts, deductions, and calculations are within Amaru's possession, custody, or control.

26.     Plaintiff has demanded an accounting, but Amaru has failed and refused to provide one. Plaintiff is therefore entitled to a full equitable accounting and payment of all amounts found due.

## SECOND CAUSE OF ACTION
### Breach of Written Agreements (Masters)

27.     Plaintiff realleges and incorporates by reference paragraphs 1 through 26 as though fully set forth herein.

29.     Although Plaintiff does not presently possess complete copies of each such written agreement after diligent search, Plaintiff alleges their existence, substance, and material terms based on partial records, credits, payment history, course of dealing, industry custom, and Amaru's own conduct, including its post-demand royalty payment to Plaintiff. These agreements were entered in connection with Plaintiff's contributions during the recording and release periods for the master recordings identified in Schedule A. The writings and more complete records are believed to be in Amaru's possession, custody, or control.

29.     Although Plaintiff does not presently possess complete copies of each such written

agreement after diligent search, Plaintiff alleges their existence, substance, and material terms based on partial records, credits, payment history, course of dealing, industry custom, and Amaru's own conduct, including its post-demand royalty payment to Plaintiff. The writings and more complete records are believed to be in Amaru's possession, custody, or control.

30.    Plaintiff performed all material obligations required of him under the parties' written agreements, except to the extent performance was excused.

31.    Amaru materially breached the parties' written agreements by, among other things, failing to provide the promised statements and accountings, failing to produce the operative agreements and related records after demand, failing to pay all monies due, miscalculating and/or withholding monies through undisclosed reserves, deductions, offsets, or classifications, and failing to account for exploitations of the applicable master recordings.

32.    As a direct and proximate result of Amaru's breaches, Plaintiff has suffered damages in an amount according to proof at trial, but in no event less than the sums that a proper accounting will reveal.

## THIRD CAUSE OF ACTION

### Breach of Oral and/or Implied-in-Fact Contract (Pled in the Alternative)

33.    Plaintiff realleges and incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

34.    To the extent no enforceable written agreement governs a particular master recording or a particular exploitation, Plaintiff and Amaru entered into oral and/or implied-in-fact agreements under which Plaintiff contributed valuable creative services and rights and Amaru agreed, through words, conduct, custom, and course of dealing, to account to Plaintiff and pay royalties and other sums in connection with exploitation of the applicable master recordings. Those obligations were capable of performance within one year because statements and payments were due periodically as exploitations occurred.

35.    Plaintiff performed all material obligations required of him under such oral and/or implied-in-fact agreements, except to the extent performance was excused.

36.    Amaru breached such oral and/or implied-in-fact agreements by failing to provide statements and accountings, failing to pay all sums due, and retaining monies from exploitation

7

of the applicable master recordings without proper accounting or payment to Plaintiff.

37.    As a direct and proximate result of those breaches, Plaintiff has suffered damages in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

38.    Plaintiff realleges and incorporates by reference paragraphs 1 through 37 as though fully set forth herein.

39.    Every contract and agreement between Plaintiff and Amaru included an implied covenant of good faith and fair dealing under which neither party would do anything to unfairly interfere with the right of the other to receive the benefits of the agreement. Among other things, Amaru exercised or controlled discretion over statement preparation, timing, reserves, deductions, revenue classifications, and recordkeeping.

40.    Amaru breached the implied covenant by, among other things, withholding accountings and backup documentation, failing to disclose the basis for monies paid or withheld, failing to maintain or produce records necessary to verify Plaintiff's compensation, exercising discretion over deductions, reserves, and classifications in a non-transparent and unfair manner, exploiting the Works without honoring Plaintiff's right to transparent reporting and payment, and otherwise acting to deprive Plaintiff of the benefits of the parties' agreements.

41.    As a direct and proximate result of Amaru's conduct, Plaintiff has been damaged in an amount according to proof.

## FIFTH CAUSE OF ACTION

### Accounting (Contractual and Equitable as to Masters)

42.    Plaintiff realleges and incorporates by reference paragraphs 1 through 41 as though fully set forth herein.

43.    A relationship exists between Plaintiff and Amaru requiring an accounting, including by reason of the parties' written, oral, and/or implied agreements, their course of dealing, Amaru's receipt and retention of monies for Plaintiff's benefit, the complicated nature of the accounts, and, in the further alternative, Plaintiff's ownership and/or co-ownership interests in one or more master recordings to the extent discovery shows no operative transfer of those

8

interests. The exact balance due cannot be determined without an accounting.

44. The amount due to Plaintiff cannot be determined without an accounting because the books, statements, source data, licensing information, reserves, deductions, and revenue calculations are solely or primarily within Amaru's possession, custody, or control, and a legal remedy is inadequate until those accounts are stated.

45. Plaintiff has demanded an accounting, but Amaru has failed and refused to provide one. Plaintiff is therefore entitled to a full accounting and payment of all amounts found due.

## SIXTH CAUSE OF ACTION

Restitution / Quasi-Contract (Pled in the Alternative)

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

47. To the extent one or more operative agreements are unenforceable, cannot presently be proven in full, or do not govern particular exploitations of the Works, Amaru has been unjustly enriched by receiving and retaining revenues, profits, and other benefits from the Works that in equity and good conscience should be restored, shared with, or paid to Plaintiff, including amounts over-retained, underpaid, or collected from exploitations not governed by any enforceable agreement.

48. Plaintiff is entitled to restitution, disgorgement, and other equitable relief in an amount according to proof.

## SEVENTH CAUSE OF ACTION

**Money Had and Received (Pled in the Alternative)**

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as though fully set forth herein.

50. Within the applicable limitations period, Amaru received money from exploitation of the Works that, in equity and good conscience, belongs in whole or in part to Plaintiff.

51. Amaru has not paid Plaintiff all such sums, despite demand. Plaintiff is therefore entitled to recover all monies had and received by Amaru for Plaintiff's use and benefit, in an amount according to proof.

## EIGHTH CAUSE OF ACTION

9

**Quantum Meruit (Pled in the Alternative)**

52.    Plaintiff realleges and incorporates by reference paragraphs 1 through 51 as though fully set forth herein.

53.    Plaintiff rendered valuable writing, production, vocal performance, arrangement, and related creative services in connection with the creation and commercial exploitation of the Works and the master recordings at issue, and those services were not intended to be gratuitous.

54.    Amaru knowingly accepted, exploited, and benefited from those services and contributions, including by accepting them with an expectation of compensation, commercially exploiting the resulting works, and making at least a partial royalty payment, under circumstances making it inequitable for Amaru to retain the benefits thereof without fully compensating Plaintiff.

55.    The reasonable value of Plaintiff's services and contributions has not been fully paid. Plaintiff is therefore entitled to recover in quantum meruit according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For a full and complete accounting of all revenues, profits, royalties, deductions, reserves, statements, source data, contracts, licenses, and other exploitations relating to the Works;

2.    For damages for breach of written contract, breach of oral and/or implied-in-fact contract, and breach of the implied covenant of good faith and fair dealing according to proof;

3.    For restitution, disgorgement, and recovery of all monies had and received by Defendant for Plaintiff's benefit according to proof;

4.    For recovery of the reasonable value of Plaintiff's services and contributions according to proof;

5.    For payment of all royalties, profits, and other sums found due through accounting, discovery, or trial;

6.    For prejudgment and post-judgment interest as permitted by law;

7.    For costs of suit incurred herein;

8.    For reasonable attorneys' fees to the extent permitted by contract; and

9.    For such other and further legal or equitable relief as the Court deems just and

10

proper.

DATED: May 8, 2026

BRET D. LEWIS (State Bar. 166819)

By: Bret D. Lewis, Attorney for Plaintiff Delmar Arnaud

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

**SCHEDULE A**

Identified Songs, Masters, and Direct Derivatives Presently at Issue

1. Ambitionz az a Ridah
2. Skandalouz
3. Got My Mind Made Up
4. 2 of Amerikaz Most Wanted
5. I Ain't Mad at Cha
6. Life's So Hard
7. Homeboyz
8. Wanted Dead or Alive
9. Pick It Up
10. I Ain't Mad at Cha (Radio Version / Edit)
11. Ambitionz az a Ridah (Nu-Mixx)
12. Got My Mind Made Up (Nu Mixx Klazzics, Vol. 2 Remix)
13. Homeboyz (Remix)
14. Wanted Dead or Alive (Gangsta Party)
15. Wanted Dead or Alive (Rosa Parks Remix)
16. Wanted Dead or Alive (Hypnotize Remix)
17. Wanted Dead or Alive (Big Pun Remix)
18. Don't Go 2 Sleep
19. Don't Go 2 Sleep (Soul G-Mix)
20. First 2 Bomb (Original Version)
21. First 2 Bomb
22. Only Move 4 Tha Money
23. Initiated
24. Initiated (Alt Remix)
25. Initiated (2Pac feat. Boot Camp Clik version)