KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Amaru Entertainment Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DELMAR DREW ARNAUD pka DAZ DILLINGER,<br><br>            Plaintiff,<br><br>      vs.<br><br>AMARU ENTERTAINMENT, INC., a corporation,<br><br>            Defendant. | CASE NO. 2:26-cv-05023<br><br>**DEFENDANT AMARU ENTERTAINMENT INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIMS for**<br><br>**1) Declaratory Relief**<br>**2) Conversion**<br>**3) Copyright Infringement**<br>**4) False Advertising**<br>**5) Trademark Infringement**<br>**6) Trademark Dilution**<br>**7) Unfair Competition**<br>**8) Constructive Trust**<br>**9) Mistaken Receipt** |
| AMARU ENTERTAINMENT, INC., a Delaware corporation,<br><br>            Counterclaimant<br><br>      vs.<br><br>DELMAR DREW ARNAUD,<br><br>            Counterdefendant. | |

Defendant and counterclaimant Amaru Entertainment Inc. ("Amaru") hereby responds to the complaint of plaintiff and counterdefendant Delmar Drew Arnaud pka Daz Dillinger (the "Arnaud"), as follows:

3982.076/3274318.1

1. Responding to paragraph 1 of the complaint, Amaru admits that the complaint speaks for itself. Except as expressly admitted, Amaru denies the allegations in said paragraph.

2. Responding to paragraph 2 of the complaint, Amaru admits that it is organized and exists under the laws of the State of Delaware, that its offices are located in the County of Los Angeles, California, and that the complaint speaks for itself. Except as expressly admitted, Amaru denies the allegations in said paragraph.

3. Responding to paragraph 3 of the complaint, Amaru admits that venue is proper in this district and that it maintains its principal place of business in Los Angeles, California. Except as expressly admitted, Amaru denies the allegations in said paragraph.

4. Responding to paragraph 4 of the complaint, Amaru admits that Arnaud is professionally known as Daz Dillinger and that he has been a recording artist, producer and songwriter. Except as expressly admitted, Amaru denies the allegations in said paragraph.

5. Responding to paragraph 5 of the complaint, responding party admits the allegations therein.

6. Responding to paragraph 6 of the complaint, Amaru is without knowledge or information sufficient to form a belief as to the truth of the allegations therein and, therefore, denies said allegations.

7. Responding to paragraph 7 of the complaint, Amaru admits that Arnaud rendered creative services on some number of Tupac Shakur's ("Shakur") recordings and denies that he contributed independently copyrightable material to them. Except as expressly admitted and denied, Amaru is without knowledge or information sufficient to form a belief as to the truth of the allegations therein and, therefore, denies said allegations.

8. Responding to paragraph 8 of the complaint, Amaru denies the allegations therein.

9.      Responding to paragraph 9 of the complaint, Amaru admits that it owns or has an ownership interest in the Tupac Shakur works listed on Schedule A which it holds for the benefit of beneficiaries designated by the late Afeni Shakur, Shakur's mother, and that the general descriptions alleged in said paragraph do not identify specific works or otherwise provide adequate information for Amaru to form a response.  Except as expressly admitted, Amaru is without knowledge or information sufficient to form a belief as to the truth of the allegations therein and, therefore, denies said allegations.

10.      Responding to paragraph 10 of the complaint, Amaru denies the allegations therein.

11.      Responding to paragraph 11 of the complaint, Amaru denies the allegations therein.

12.      Responding to paragraph 12 of the complaint, Amaru admits that it has possession of copies of some documents that appear to be within the descriptions therein.  Except as expressly admitted, Amaru is without knowledge or information sufficient to form a belief as to the truth of the allegations therein and, therefore, denies said allegations.

13.      Responding to paragraph 13 of the complaint, Amaru denies the allegations therein.

14.      Responding to paragraph 14 of the complaint, Amaru admits that the complaint speaks for itself.  Except as expressly admitted, Amaru denies the allegations therein.

15.      Responding to paragraph 15 of the complaint, Amaru admits that the complaint speaks for itself and that his status as a co-writer of certain of the compositions listed on Schedule A is generally acknowledged.  Except as expressly admitted, Amaru denies the allegations therein.

16.      Responding to paragraph 16 of the complaint, Amaru denies the allegations therein.

17. Responding to paragraph 17 of the complaint, Amaru admits that Arnaud, through counsel, purported to make certain demands of Amaru on or before October 18, 2024.  Except as expressly admitted, Amaru denies the allegations therein.

18. Responding to paragraph 18 of the complaint, Amaru admits that it paid Arnaud $91,445.27 after October 18, 2024, and that it did not provide royalty statements or other underlying documentation in connection with the payment. Except as expressly admitted, Amaru denies the allegations therein.

19. Responding to paragraph 19 of the complaint, Amaru denies the allegations therein.

20. Responding to paragraph 20 of the complaint, Amaru denies the allegations therein.

21. Responding to paragraph 21 of the complaint, Amaru denies the allegations therein.

## FIRST CAUSE OF ACTION

### Accounting as to Musical Compositions

22. Responding to paragraph 22 of the complaint, Amaru incorporates its responses to the preceding paragraphs.

23. Responding to paragraph 23 of the complaint, Amaru admits that Arnaud co-wrote one or more musical compositions identified in Schedule A. Except as expressly admitted, Amaru denies the allegations therein.

24. Responding to paragraph 24 of the complaint, Amaru denies the allegations therein.

25. Responding to paragraph 25 of the complaint, Amaru admits that it receives revenues with respect to certain of the works.  Except as expressly admitted, Amaru denies the allegations therein.

26. Responding to paragraph 26 of the complaint, Amaru admits that Arnaud has demanded an accounting and that Amaru has not provided one.  Except

KING, HOLMES,
PATERNO &
SORIANO, LLP

as expressly admitted, Amaru denies the allegations therein.

## SECOND CAUSE OF ACTION

### Breach of Written Agreements

27.    Responding to paragraph 27 of the complaint, Amaru incorporates its responses to the preceding paragraphs.

28.    Responding to the first paragraph number 29 of the complaint, Amaru admits that it has possession of copies of certain agreements to which Arnaud is a party, and denies that its "post-demand royalty payment" or other conduct evidences the existence, substance, or material terms of any agreements, or of any obligations. Amaru is without knowledge or information to form a belief as to the remaining allegations therein and, therefore, denies said allegations.

29.    Responding to the second paragraph number 29 of the complaint, Amaru admits that it has possession of copies of certain agreements to which Arnaud is a party, and denies that its "post-demand royalty payment" or other conduct evidences the existence, substance, or material terms of any agreements, or of any obligations. Amaru is without knowledge or information to form a belief as to the remaining allegations therein and, therefore, denies said allegations.

30.    Responding to paragraph 30 of the complaint, Amaru denies the allegations contained therein.

31.    Responding to paragraph 31 of the complaint, Amaru denies the allegations contained therein.

32.    Responding to paragraph 32 of the complaint, Amaru denies the allegations contained therein.

## THIRD CAUSE OF ACTION

### Breach of Oral and/or Implied-in-Fact Contract

33.    Responding to paragraph 33 of the complaint, Amaru incorporates its responses to the preceding paragraphs.

34.    Responding to paragraph 34 of the complaint, Amaru denies the

allegations contained therein.

35.    Responding to paragraph 35 of the complaint, Amaru denies the allegations contained therein.

36.    Responding to paragraph 36 of the complaint, Amaru denies the allegations contained therein.

37.    Responding to paragraph 37 of the complaint, Amaru denies the allegations contained therein.

## FOURTH CAUSE OF ACTION

### Breach of Oral and/or Implied-in-Fact Contract

38.    Responding to paragraph 38 of the complaint, Amaru incorporates its responses to the preceding paragraphs.

39.    Responding to paragraph 39 of the complaint, Amaru denies the factual allegations therein.

40.    Responding to paragraph 40 of the complaint, Amaru denies the allegations therein.

41.    Responding to paragraph 41 of the complaint, Amaru denies the allegations therein.

## FIFTH CAUSE OF ACTION

### Accounting

42.    Responding to paragraph 42 of the complaint, Amaru incorporates its responses to the preceding paragraphs.

43.    Responding to paragraph 43 of the complaint, Amaru denies the allegations therein.

44.    Responding to paragraph 44 of the complaint, Amaru denies the allegations therein.

45.    Responding to paragraph 45 of the complaint, Amaru admits that Arnaud has demanded an accounting.  Except as expressly admitted, Amaru denies the allegations therein.

KING, HOLMES,
PATERNO &
SORIANO, LLP

3982.076/3274318.1                                                                6

## SIXTH CAUSE OF ACTION

### Restitution/Quasi-Contract

46.    Responding to paragraph 46 of the complaint, Amaru incorporates its responses to the preceding paragraphs.

47.    Responding to paragraph 47 of the complaint, Amaru denies the allegations therein.

48.    Responding to paragraph 48 of the complaint, Amaru denies the allegations therein.

## SEVENTH CAUSE OF ACTION

### Money Had and Received

49.    Responding to paragraph 49 of the complaint, Amaru incorporates its responses to the preceding paragraphs.

50.    Responding to paragraph 50 of the complaint, Amaru denies the allegations therein.

51.    Responding to paragraph 51 of the complaint, Amaru denies the allegations therein.

## EIGHTH CAUSE OF ACTION

### Quantum Meruit

52.    Responding to paragraph 52 of the complaint, Amaru incorporates its responses to the preceding paragraphs.

53.    Responding to paragraph 53 of the complaint, Amaru admits that Arnaud rendered services for compensation in connection with the creation of works listed on Schedule A to the complaint.  Except as expressly admitted, Amaru denies the allegations therein.

54.    Responding to paragraph 54 of the complaint, Amaru denies the allegations therein.

KING, HOLMES, PATERNO & SORIANO, LLP

3982.076/3274318.1

7

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

55. The complaint, and every purported claim for relief alleged therein, fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

56. The complaint, and every purported claim for relief alleged therein, is barred due to Arnaud's unclean hands.

### THIRD AFFIRMATIVE DEFENSE

57. Arnaud is barred from relief on the complaint, and every purported claim for relief alleged therein, by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

58. Arnaud is barred from relief on the complaint, and every purported claim for relief alleged therein, by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

59. Arnaud is barred from relief on the complaint, and every purported claim for relief alleged therein, by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

60. Arnaud is barred from relief on the complaint, and every purported claim for relief alleged therein, by his failure to mitigate his damages, if any.

### SEVENTH AFFIRMATIVE DEFENSE

61. The complaint, and every purported cause of action alleged therein, is barred by the applicable statutes of limitations, including, but not limited to, the two-year statute of limitations on contracts not in writing and the four-year statement of limitations on agreements in writing.

### EIGHTH AFFIRMATIVE DEFENSE

62. Arnaud's damages, if any, were caused by his own acts and omissions and/or by the acts and omissions of third parties.

King, Holmes,
Paterno &
Soriano, LLP

3982.076/3274318.1

8

## NINTH AFFIRMATIVE DEFENSE

63.    The complaint, and every purported cause of action alleged therein, is barred in whole or in part because Amaru is entitled to an offset.

## TENTH AFFIRMATIVE DEFENSE

64.    The complaint, and each purported cause of action alleged therein, is barred by Arnaud's breach of his covenant of good faith and fair dealing.

## ELEVENTH AFFIRMATIVE DEFENSE

65.    Arnaud is barred from relief on the complaint, and on each purported cause of action alleged therein, because Amaru's conduct was justified and/or privileged under the circumstances.

## ELEVENTH AFFIRMATIVE DEFENSE

66.    Arnaud is barred from relief on the complaint, and on each purported cause of action alleged therein, because he has failed to join a necessary party.

## AMARU'S COUNTERCLAIMS

1.    Amaru's counterclaims are for 1) a declaration concerning Arnaud's rights under a series of agreements he entered into with Death Row Records and others, pursuant to which, *inter alia*, the services he provided were works for hire for Death Row Records, and for which DRR, and not Arnaud, was entitled to payment; 2) Arnaud's willful infringement of Amaru's copyrights in Tupac Shakur recordings; 3) Arnaud's willful infringement of Amaru's MAKAVELI trademark; and 4) Arnaud's knowing acceptance of producer royalties to which he knew or should have known he was not entitled.

## THE PARTIES

2.    Amaru is and at all times material herein has been a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the County of Los Angeles, California.

3.    On information and belief, Arnaud is an individual residing in the State of Georgia.

KING, HOLMES, PATERNO & SORIANO, LLP

3982.076/3274318.1                                    9

## JURISDICTION AND VENUE

4.      This action arises under the United States Copyright Act of 1976.  The complaint states a claim for infringement of a federally registered copyright under the Copyright Act (17 U.S.C. §§ 106 and 501).

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 2001.  This Court has pendent and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and 1367(a).

6.      This Court has personal jurisdiction over Arnaud because he has filed the instant action, because he entered into the agreements alleged herein in the County of Los Angeles, California, and, on information and belief, because he committed one or more of wrongful acts complained of herein in California and in this district.

7.      Venue in this Court is proper at least under the provisions of 28 U.S.C. § 1391.

## FIRST CLAIM FOR RELIEF

### (For Declaratory Relief)

8.      Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

9.      As of January 1, 1993, Arnaud entered into a recording agreement with Death Row Records, Inc. ("DRR").

10.      As of January 1, 1993, Arnaud entered into a co-publishing agreement with Suge Music.

11.      As of April 7, 1995, Arnaud entered into a staff producer agreement with DRR.

12.      As of February 6, 1996, Arnaud, through his designated attorney in fact, entered an agreement among DRR, Interscope Records and Amaru (the "February 6, 1996 Agreement") pursuant to which payment for his staff production services was to be made to DRR, and pursuant to which he agreed to look solely to

DRR for compensation for his services as a producer of master sound recordings on the Tupac Shakur album *All Eyez on Me*.

13.    As of February 6, 1996, Amaru and DRR entered into an agreement (collectively with the February 6, 1996 Agreement, the "1996 DRR Agreements") with respect to Arnaud's services as producer of master sound recordings on *All Eyez on Me*, which included Arnaud's agreement to be bound by that agreement. *Arnaud* executed an acknowledgement and agreement with respect to those services.

14.    As of December 2, 1997, Arnaud entered into a new co-publishing agreement with Suge Music.

15.    As of May 8, 1997, Arnaud entered into a producer agreement with DRR with respect to the soundtrack album *Gang Related*, including the track "Life's So Hard".

16.    As of December 31, 1998, Arnaud entered into an agreement with DRR (the "1998 DRR Agreement") amending the his agreements with DRR.

17.    On information and belief, in or about 1999, Arnaud negotiated or partially negotiated an agreement with the Estate of Tupac Shakur with respect to the sound recording "Homeboyz." Due to the passage of time and unavailability of records from that time, Amaru is unable to locate an executed copy of that agreement.

18.    In or about 2000, Amaru filed suit against Arnaud for distributing sound recordings of unreleased Tupac Shakur recordings, including one or more recordings listed on Schedule A to Arnaud's complaint herein, as a result of which Arnaud stopped the infringing distribution and agreed not to resume it, and was to surrender to Amaru Tupac Shakur recordings illegally in his possession.

19.    There is an actual and justiciable controversy between Amaru and Arnaud in that Amaru contends that Arnaud's purported claims alleged in his complaint (the "Claims") are barred by the four-year statute of limitations applicable to actions for breach of written agreements, the two-year statute of limitations

King, Holmes,
Paterno &
Soriano, LLP

3982.076/3274318.1                                                11

applicable to actions for breach of oral agreements, other statutes of limitations that may be applicable, and laches, and that Arnaud waived or is estopped to advance those claims; and in that Arnaud denies same.

20.    Amaru further contends that, if the Claims are not so barred, there is an actual and justiciable controversy between Amaru and Arnaud concerning whether the terms and conditions of the agreements alleged in the foregoing paragraphs, or, on information and belief, of other agreements that are not available to Amaru due to the passage of time or for other reasons, preclude some or all of the relief that Arnaud seeks against Amaru.

21.    A judicial declaration of the parties' respective rights and obligations as to whether Arnaud's claims are untimely or precluded by the terms and conditions of the agreements alleged above, or by other agreements to which Amaru does not have access, is necessary and appropriate.

22.    Amaru seeks a judgment declaring that Arnaud's claims are barred by the applicable statutes of limitations and by laches, that Arnaud has waived his claims, that Arnaud is estopped to pursue his claims, that Amaru has no financial obligation to Arnaud with respect to the works alleged in the complaint, that Arnaud has no contractual right to compensation he has received with respect to some or all of the works, and that Amaru is entitled to disgorgement of such compensation to the extent it was deducted from or otherwise reduced compensation otherwise payable to Amaru.

**SECOND CLAIM FOR RELIEF**

(For Conversion)

23.    Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

24.    Amaru is the successor-in-interest to Tupac Shakur's intellectual and personal property, including his copyrights, audio and audio-visual recordings, and handwritten notes and lyrics.

KING, HOLMES,
PATERNO &
SORIANO, LLP

3982.076/3274318.1                                    12

25.    In audio-video recordings of interviews on YouTube.com and Instagram, published written interviews, and elsewhere, Arnaud has admitted that he took and has possession of at least one Tupac Shakur master recording, "How Can U Be Down," at least forty original "reels" of Tupac Shakur performances, walls covered with lyrics handwritten by Tupac Shakur, and other material (collectively, the "Material"), all of which Amaru owns.  Amaru is informed and believes that is the tip of the iceberg, and that Arnaud illegally appropriated and has possession of other similar Amaru property that Tupac Shakur created and that belonged to him.

26.    Amaru is informed and believes that Arnaud has sold Material to third parties and retained the proceeds for himself.

27.    Amaru is the owner of the Material.  Arnaud has no right or interest in, and converted, the Material.

28.    Amaru is entitled to an order that Arnaud immediately turn over to Amaru the Material and any and all proceeds he has received from selling or exploiting the Material.

29.    As a direct and proximate result of Arnaud's conversion of the Material, Amaru has suffered damages in an amount to be proved at trial, but which Amaru is informed and believes exceeds $1,000,000.

30.    Arnaud acted with willful and conscious disregard of Amaru's rights and interests with the intent to benefit himself, while subjecting Amaru to cruel and unjust hardship and harm, and with the intent to defraud Amaru of its rights, thereby entitling Amaru to an award of punitive damages against Arnaud in order to punish Arnaud and to deter similar misconduct in the future.

## THIRD CLAIM FOR RELIEF

### (For Copyright Infringement)

31.    Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

32.    Amaru is the owner of the copyright in the sound recording

"Killuminati."

33.     From and after 2024, and continuing until the present, Arnaud has infringed Amaru's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, by posting on Instagram music interpolating portions of "Killuminati" with the post "Happy Birthday Tupac Shakur New Music Boosie Bad Azz 2Pac & Daz" in order to promote himself and his products and, on information, by selling copies of the recording.  Arnaud did so without Amaru's knowledge or consent.

34.     Arnaud's conduct has damaged and will continue to damage Amaru. Amaru's damages include, but are not limited to, the value of the use and all monies and other consideration Arnaud has received as a result of the infringement.

35.     As a result of their conduct as alleged above, Arnaud has been unjustly enriched and has wrongfully profited.

36.     Amaru is entitled to actual damages and any profits that are attributable to the infringement and not taken into account in computing actual damages, in an amount to be proved at trial, and to all other relief allowed under the Copyright Act, including statutory damages for willful copyright infringement, all in an amount to be proved at trial herein; and to injunctive relief requiring Arnaud to cease and desist from any further exploitation of the Killuminati.

## FOURTH CLAIM FOR RELIEF

(False Advertising -- Lanham Act, 15 U.S.C. § 1125(a))

37.     Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

38.     Amaru is the registered owner of the trademark "Makaveli" (the "Mark"), Registration number No. 326870.

39.     Arnaud has infringed and is continuing to infringe the Mark by advertising, promoting, distributing and selling caps emblazoned with the words "Makaveli Dillinger." Arnaud's use of the Mark was and is likely to, intended to, did, and will continue to confuse and mislead the public and misrepresent and create

King, Holmes,
Paterno &
Soriano, LLP

3982.076/3274318.1                                    14

the false impression that Amaru authorized, approved, endorsed, or sponsored the Infringing Products, or is connected or affiliated with Arnaud.

40.     Amaru never authorized, approved, endorsed, or sponsored Arnaud's caps and never authorized, approved, or consented to Arnaud's use of the Mark.

41.     As a direct and proximate result of Arnaud's conduct, Amaru has been damaged and will continue to be damaged in an amount to be proven at trial.

42.     Pursuant to 15 U.S.C. §§ 1116(a), 1118, and 1125(a), Amaru is entitled to an order enjoining Arnaud from marketing, distributing, or selling the infringing products and impounding and destroying all of Arnaud's infringing products and marketing materials pertaining to them.

43.     Pursuant to 15 U.S.C. § 1117(a), Amaru is entitled to an order: (a) requiring Arnaud to account for and pay to Amaru all profits derived by him from his conduct alleged herein, to be increased according to applicable provisions of law, and (b) awarding all damages sustained by Amaru and caused by Arnaud

44.     Arnaud's conduct alleged herein was intentional, egregious, and without foundation in law and, therefore, under 15 U.S.C. § 1117(a) Amaru is entitled to an award of treble damages against Arnaud.

45.     Arnaud's acts make this an exceptional case under 15 U.S.C. § 1117(a), thereby entitling Amaru to an award of reasonable attorneys' fees.

### FIFTH CLAIM FOR RELIEF

(Trademark Infringement—Lanham Act, 15 U.S.C. § 1114)

46.     Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

47.     Without Amaru's permission or consent, Arnaud has engaged in the unauthorized use in commerce of reproductions, counterfeits, copies and/or imitations of Amaru's Mark in connection with his advertising, distribution, offering for sale, and sales of his infringing products, and in their promotion of his business and other merchandise.

KING, HOLMES, PATERNO & SORIANO, LLP

3982.076/3274318.1

15

48.     Arnaud's unauthorized use of the Mark in commerce is and was likely to cause confusion, or to cause mistake, or to deceive the public, as described above, in violation of the Lanham Act, 15 U.S.C. § 1114(1).  Arnaud committed those acts with the knowledge and intent that his use of the Mark would cause confusion, deception, or mistake.

49.     As a direct and proximate result of Arnaud's willful infringing conduct as described above, Amaru has been damaged and will continue to be damaged in amounts to be proven at trial.  Arnaud's infringing conduct entitles Amaru to recover its actual damages, trebled, together with Arnaud's profits, and Amaru's attorney fees and costs.

50.     Amaru is entitled to a permanent injunction to prevent future infringing conduct and to the seizure and return of all of Arnaud's infringing products, and all promotional, advertising, marketing and other material related thereto.

## SIXTH CLAIM FOR RELIEF

(Trademark Dilution)

51.     Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

52.     The Mark is a famous and extremely recognizable and distinctive mark used in interstate commerce in the United States.  Arnaud began selling his infringing products after the Mark was famous.

53.     Arnaud's use of the Mark is likely to dilute and detract from the distinctiveness of the Mark with resulting damage to Amaru and to the substantial business and goodwill symbolized by the Mark.

54.     Arnaud's conduct in marketing, distributing, and selling his infringing products and in his promotion of his business and other merchandise, is and was willfully intended to trade on Amaru's reputation or to cause dilution of the Mark, and hence Amaru is entitled to damages and other remedies under 15 U.S.C. § 1125(c)(2) and to a permanent injunction to prevent future infringing conduct.

## SEVENTH CLAIM FOR RELIEF

### (Unfair Competition, California Bus.& Prof. Code § 17200 et seq.)

55.  Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

56.  Arnaud's wrongful acts described herein constitute unlawful, unfair, and fraudulent business practices and misleading advertising under California Business &Professions Code § 17200 et seq.

57.  Amaru has been damaged and will continue to be damaged by Arnaud's unlawful, unfair, and fraudulent business practices and misleading advertising, as described above.

58.  Amaru is entitled to an injunction prohibiting Arnaud from continuing the practices described above, and to restitution of all amounts acquired by Arnaud by means of their acts of unfair competition.

## EIGHTH CLAIM FOR RELIEF

### (Constructive Trust)

59.  Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

60.  By virtue of his wrongful conduct, Arnaud illegally received money and profits that rightfully belonged to Amaru.  Arnaud therefore is an involuntary trustee, holding the gross receipts from his sales and revenues to the extent attributable to their wrongful exploitation of the Mark and sales of converted Tupac Shakur an Amaru property.  Arnaud holds such moneys and funds on behalf of and subject to a first and prior lien against all others and in favor of Amaru.  Upon information and belief, Arnaud holds this illegally received money and profits in the form of bank accounts, real property, and personal property that can be located and traced.  Amaru is entitled to the remedy of a constructive trust in view of Arnaud's wrongful conduct alleged hereinabove.

/ / /

KING, HOLMES,
PATERNO &
SORIANO, LLP

3982.076/3274318.1

17

## NINTH CLAIM FOR RELIEF

(Mistaken Receipt)

61.     Amaru incorporates the foregoing paragraphs by reference, as though fully set forth.

62.     In or about October 2024 Amaru paid Arnaud the sum of $91,445.27 in royalties based on information provided by DRR's then successor-in-interest. Amaru has discovered that, pursuant to the 1996 DRR Agreements and the 1998 DRR Agreement, some or all of that payment was made by mistake, and that Arnaud did not have a right to some or all of that money.  On information and belief, Arnaud has received other payments to which he was not entitled pursuant to agreements he entered into

63.     On information and belief, Arnaud knew that he was not entitled to the payments alleged herein when he demanded and accepted them.  Asking Arnaud to return that money would be futile.  Arnaud now owes some or all of that that money to Amaru.

64.     Accordingly, Amaru is entitled to an order that Arnaud return that money to Amaru, with interest at the legal rate from the date of payment.

WHEREFORE, Amaru prays for judgement as follows:

1.     That Arnaud take nothing by its complaint;

2.     For damages according to proof, plus interest at the legal rate;

4.     For statutory damages under the Copyright Act;

5.     For punitive damages;

6.     For treble damages;

7.     For temporary, preliminary and permanent injunctive relief enjoining Arnaud

(a)     To turn over to Amaru all Amaru Material in his possession, custody or control;

(b)     From marketing, distributing, or selling Amaru's copyrighted

KING, HOLMES,
PATERNO &
SORIANO, LLP

3982.076/3274318.1

18

sound recordings of Tupac Shakur;

(c)    From marketing, distributing, advertising, promoting and selling products bearing the Mark;

(d)    To destroy all products bearing the Mark in his possession, custody or control, and all copies of and marketing, promotional and other materials related to them;

(e) To turn over to Amaru all books and records, including, but not limited to, all distribution and other agreements, accountings, royalty and other statements, sales and distribution records, purchase orders, invoices, receipts, accounts, accounting entries, and all other things and materials related to sales of products infringing the Mark and products infringing Amaru's copyright, as alleged hereinabove;

(f) Requiring Arnaud to pay over to Amaru all monies and other things of value received on account of sales, distribution and/or any other exploitation of the Mark and products infringing Amaru's copyright; and

(g) From any further use of the Mark and of Amaru's copyrighted material;

8.    For disgorgement of monies paid by or on behalf of Amaru to Arnaud, or that reduced moneys otherwise payable to Amaru,  by mistake;

9.    For an accounting;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

KING, HOLMES,
PATERNO &
SORIANO, LLP

3982.076/3274318.1                                        19

10. For a constructive trust;

11. For attorney fees and costs incurred herein; and

12. For such other and further relief as the Court deems just and proper.

DATED:  July 31, 2026

KING, HOLMES, PATERNO & SORIANO, LLP


By: _____/s/ Stephen D. Rothschild_____
STEPHEN D. ROTHSCHILD
Attorneys for Amaru Entertainment Inc.

## **REQUEST FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury for the claims asserted herein.

DATED:  July 31, 2026             KING, HOLMES, PATERNO &
                                                SORIANO, LLP


                                          By:  ___/s/ Stephen D. Rothschild___
                                                     STEPHEN D. ROTHSCHILD
                                              Attorneys for Amaru Entertainment Inc.

KING, HOLMES,
PATERNO &
SORIANO, LLP

3982.076/3274318.1                                  21

## <u>PROOF OF SERVICE</u>

**Delmar Drew Arnaud v. Amaru Entertainment Inc. et al
Case No. 2:26-cv-05023-E**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of .  My business address is 1900 Avenue of the Stars, Twenty-Fifth Floor, Los Angeles, CA 90067-4506.

On July 31, 2026, I served true copies of the following document(s) described as **DEFENDANT AMARU ENTERTAINMENT INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIMS** on the interested parties in this action as follows:

Bret D. Lewis                              Attorney for Plaintiff
Bret D. Lewis and Associates              Delmar Drew Arnaud pka Daz Dillinger
3955 Mandeville Canyon Road
Los Angeles, CA 90049
Tel:   310-770-2361
Fax:   310-362-8424
Email: bdlawyager@gmail.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address JRondez@khpslaw.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 31, 2026, at Los Angeles, California.


                                        _/s/ Janice Rondez_____
                                        Janice Rondez

KING, HOLMES,
PATERNO &
SORIANO, LLP

3982.076/3274318.1